BEFORE THE FIRST DIVISION, JANUARY 23, 1953

**No. 57026.**—Prill Silver Co. and American Shipping Co. v. United States, protest 139563–K (New York).

OLIVER, Chief Judge: This case relates to glass articles, consisting of lusters and pendants, which were classified as cased glassware, and assessed with duty at the rate of 60 per centum ad valorem under paragraph 218 (d) of the Tariff Act of 1930. The shipment under consideration included the exact number of

pendants to be attached to the lusters to make completed articles. The classification of the luster and its pendants as an entirety is not disputed. Plaintiffs claim that the articles are properly classifiable as table articles or utensils of the kind provided for in paragraph 218 (f) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, which reads as follows:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, if cut or engraved, however provided for in paragraph 218 (f), Tariff Act of 1930, and valued at not less than $1 each (except articles primarily designed for ornamental purposes, decorated chiefly by engraving and valued at not less than $8 each), 45% ad val.

It is agreed between the parties that the articles in question are in chief value of glass, and that each luster with its pendants is valued at more than $1 each.

Two witnesses testified herein. Both appeared on behalf of plaintiffs.

William R. Shapiro, the customs examiner who advisorily classified the merchandise in question and who, it is conceded, is an expert on the subject of glass lusters, described the merchandise in question as follows (R. 3):

The lustres were composed of two layers of glass which are known as cased glass, an outer layer of pink glass on an inner layer of white glass and packed with pendants, either attached or in the same shipment unattached.

The witness identified an article (plaintiffs' illustrative exhibit 1) as being illustrative of the present merchandise "only in the sense that it is an outer layer of pink glass over an inner layer of white glass and has with it a sufficient number of pendants to attach to the pins that are attached to the goblet portion." The said exhibit differs from the articles in question "in the structural design of the goblet," which the witness explained as follows:

Some of these pink lustres come in with a scalloped top that is not cut such as this illustrative sample. This illustrative sample has in addition to cut pendants has a cut top, but many of them and the one in this shipment may be a scalloped top which was not cut. In other words, the scallop portion of the lustres that are before the Court in this case may not have been cut.

The illustrative exhibit referred to has cuttings (indentations) along the front of the pendants. The flat sides and the pointed end are ground and polished; they are not cut. The ball top is polished, not cut.

Further testimony of the witness establishes that the lusters are of cased glass and the pendants included in the shipment under consideration are cut glass.

The provision in paragraph 218 (f), as modified, *supra*, for table and kitchen articles and utensils is predicated on use, and embraces articles and utensils composed of glass which are chiefly used on the table or in the kitchen. *Koscherak Bros.* v. *United States*, 8 Cust. Ct. 300, C. D. 625.

Consistent with the judicial interpretation under the cited case, plaintiffs sought to establish chief use of the present merchandise, and for that purpose offered the testimony of one Pincus Weinstein, employed by the importing company for a period of 18 years. Describing his duties, the witness stated (R. 16): "mostly I check in the imports to see they correspond with the invoices." In such capacity, he has seen all the invoices covering lusters and pendants imported by his employer, and has observed that all the pendants handled by his firm are cut, and that the lusters and pendants are always bought and sold, and used, together.

As to the question of chief use, the witness testified that most of these articles are sold to shopkeepers in the condition as imported, and "Some of them are converted into lamps and sold as lamps." On a commercial trip for his employer, which included the cities of Cleveland, Dayton, Chicago, Detroit, St. Louis, Cincinnati, and Indianapolis, the witness observed merchandise, like that under consideration, on display "in most of the shops that I went to, and they were

mostly mounted for lamps." Concerning actual use of these articles, the witness stated that "I have a pair on my fireplace in the house," used on a mantel. He also saw them in unidentified friends' homes in New York City where the articles were used, as stated by the witness, "I think mostly as lamps."

This testimony is not sufficient to establish the chief use of the imported merchandise as table or kitchen articles. The most favorable statement to be made in support of plaintiffs' position is that the luster, with its pendants, is ultimately converted into a lamp, but there is no proper showing of the chief use that is essential for classification of the merchandise under the provisions of paragraph 218 (f), as modified, *supra*.

Plaintiffs' failure of proof on the question of chief use precludes classification of the present merchandise under said modified paragraph 218 (f), as claimed. Furthermore, plaintiffs have failed to establish that the imported lusters are composed "wholly or in chief value of glass, blown or partly blown in the mold or otherwise," a necessary prerequisite to classification under paragraph 218 (f), as modified.

The collector's classification of the merchandise carries a presumption of correctness, and the record before us fails to overcome that presumption. The protest is therefore overruled and judgment will be rendered accordingly.